**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **NICHOLAS COLUCCI,** | § | |
| **d/b/a EZ LINE PUTTERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION No. 6:08cv288-JDL** |
| **v.** | § | |
| | § | |
| **CALLAWAY GOLF COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the disputed term in U.S. Patent No. 4,962,927 ("the '927 patent"). In the above-styled cause of action,  Plaintiff Nicholas Colucci d/b/a EZ Line Putters ("Colucci") accuses Defendant Callaway Golf Company ("Callaway") of infringing both claims of the '927 patent. The parties originally submitted four terms for construction, but after the *Markman* hearing, presented only one remaining term, "putter head," for construction. (Doc. No. 82) ("Provisional Claim Construction Order"). Colucci filed an Opening Claim Construction Brief (Doc. No. 50) ("Opening"). Callaway then filed a Responsive Claim Construction Brief (Doc. No. 51) ("Response"). A *Markman* hearing was held on November 5, 2009 (Doc. No. 69) ("Transcript"). For the reasons stated herein, the court adopts the construction set forth below.

**OVERVIEW OF THE PATENT**

Colucci owns a patent entitled "Putter Head" that describes and claims a golf putter head having certain features that aim to improve putting action on the golf course. In general terms, the patent describes an apparatus that provides solutions to problems faced by putter head designers– such as (1) the twisting of a putter head at impact when the ball is not struck in the center of the club face, and (2) having to bend down to pick up a ball. The putter head is comprised of two parts. First,

there is the blade, which has a front face, a rear surface, and a sole. Second, there is a "weight distributions means" ("WDM") that also includes a means for retrieving a golf ball. Importantly, in the Summary of the Invention the inventor states that "the object of my invention is to provide a putter that is balanced, easy to line up, hit out of deep grass, easy to control, and can pick up a golf ball out of a putting cup." '927 patent at 1:20–23.

In the claimed design, the putter head includes a WDM extending from the back of the blade. '927 patent at 2:53.  The weight distribution means consists of a flange and two narrow walls parallel to each other and extending from the back of the blade in a perpendicular direction. *Id*. at 1:45–46, 2:65–68. The narrow walls are "generally coextensive" in height with the face of the blade, and are spaced far enough apart to allow a golf ball to become wedged between the walls. '927 patent at 1:32–36, 1:44–49, 2:55–61. The flange and walls distribute weight on either side of the "sweet spot," and allow a golf ball to be picked up without the golfer bending over, *see id*. at 1:57–59, 2:16–17, 2:28–32, 2:57–61; *see also* '927 patent at Figures 1 (bottom of the claimed putter) and Figure 5 (side view of the putter).





2

The improvements and advantages of the putter result largely from the effect of the WDM. Perceived improvements of the WDM are: improved balance and ease of control, '927 patent at 1:20–21, centering weight on the blade's sweet spot, *id*. at 2:16–17, producing inertial energy on the down swing to reduce the twist of the blade on an off hit, *id*. at 1:54–56, 2:20–23, providing a solid feel and directional control, *id*. at 1:54–59, and reducing resistance from grass. *Id*. at 1:60–61. In effect, the mechanics of the WDM provide weight directly behind the hitting area, which widens the sweet spot and allows the golfer using the putter head to strike the ball in a manner that is balanced and easy to control. *See generally* '927 patent at 2:51–3.3 (claim 1).

This patent issued on October 16, 1990 on an application filed on February 15, 1990. The Colucci patent has two claims, both of which are asserted herein. Claim 1 is directed at the physical structure and orientation of the components that comprise the WDM and provides the perceived advantages discussed in the specification. Claim 2 is dependent on claim 1 and is directed to a sighting line on the upper surface of the putter head for lining up the putt with a target.  Claim 1 contains all of the terms that were originally submitted for construction and is provided below with the disputed claim term set forth in bold.

Claim 1 of the '927 patent provides:

1.      A **putter head** comprising:
        a blade having a front face including a sweet spot for striking a golf ball,
        a rear surface,
        a sole and weight distribution means including
                means for retrieving a golf ball, said retrieving means being defined by two substantially vertical, narrow walls, generally coextensive in height with that of said blade, on opposite sides of said sweet spot and extending rearward from said rear surface of said blade, the spaced apart distance between said walls being such that the golf ball to be retrieved can become wedged there between when the putter head is placed over a golf ball and pressure is applied downward, the bottom edges of said walls providing reduced resistance from grass while putting, said weight distribution means including

3

> a horizontal flange extending rearward from said blade, substantially perpendicular thereto, and generally coextensive with the upper edges of said blade and said parallel walls, whereby said flange and said walls provide weight centered directly behind the sweet spot to provide a solid feel and directional control in putting.

'927 patent at 2:51–3:3 (claim 1). The parties only dispute the claim term "putter head," and that term will be discussed herein.

## **LEGAL STANDARD**

The claims of a patent define the patented invention. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389–90 (1996). Under *Markman v. Westview Instruments, Inc.*, the court construes the scope and meaning of disputed patent claims as a matter of law. 517 U.S. 370, 373 (1996). Claims are construed from the standpoint of a person having ordinary skill in the art, *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003), and according to the Federal Circuit, the court must "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (internal quotations omitted); *see also Phillips*, 415 F.3d at 1313 ("the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention").

The first step of the claim construction analysis requires the court to look to the intrinsic evidence, beginning with the words of the claims themselves, followed by the specification and—if in evidence—the prosecution history. *Teleflex, Inc. v. Ficosa N. Am.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–84 (Fed. Cir. 1996); *see also Phillips*, 415 F.3d at 1315 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms").  A term's context in the asserted claim can be very instructive,

while other claims can also aid in determining the term's meaning because claim terms are typically used consistently throughout the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

The claims of a patent "must [also] be read in view of the specification, of which they are a part" because the specification may help resolve ambiguity where the words in the claims lack clarity. *Id.* at 1315; *Teleflex*, 299 F.3d at 1325. Yet, the written description "should never trump the clear meaning of the claim terms." *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (citations omitted); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) ("[a]lthough claims must be read in light of the specification of which they are part, . . . it is improper to read limitations from the written description into a claim").

An inventor may "choose [ ] to be his or her own lexicographer" by expressly defining terms in the specification. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999). A court may examine the prosecution history to determine whether the patentee intended to deviate from a term's ordinary and customary meaning. *Teleflex*, 299 F.3d at 1326. The prosecution history may "limit[ ] the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). To narrow the plain language of claim, a disclaimer must be "clear and unmistakable." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009). If analysis of the intrinsic evidence resolves any ambiguity in disputed claim terms, then "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583 (citations omitted). Extrinsic evidence—such as expert testimony, dictionaries, and

treatises—may be used only if ambiguities remain after analyzing all the intrinsic evidence. *Id.*

at 1584. In short, as summarized in *Phillips*:

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, at 415 F.3d at 1416 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243,

1250 (Fed. Cir. 1998)).

## DISCUSSION

### I. "putter head"[1]

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction required. | The portion of the putter connected to the distal end of the shaft, small enough to enter the putting hole cup to retrieve a golf ball. |

The instant claim construction dispute centers on two portions of the specification where the

inventor describes (1) "The object of my invention is to provide a putter that is balanced, easy to line

up, hit out of deep grass, easy to control, and *can pick up a golf ball out of a putting cup*," '927

patent at 1:20–23, and (2) "the putter head is small enough to enter the putting hole cup to retrieve

a golf ball." *Id.* at 1:38–40. The parties dispute whether these descriptions suggest that the inventor

and the Patent Examiner understood the claimed invention to necessarily be small enough to enter

the putting hole cup to retrieve a golf ball.

---

[1] The term "putter head" is contained in claims 1 and 2 of the '927 patent.

6

Plaintiff contends that "putter head" is not limited in size as Defendant proposes. OPENING at 7. Plaintiff argues that the '927 patent's claim language properly claims a putter head that can be small enough to retrieve a golf ball from the putting hole cup, but is not limited to this embodiment. *Id*. Plaintiff contends that the claims should not be limited to the embodiment discussed in the Summary of the Invention section because those size limitations were not carried throughout the patent, or otherwise mentioned in the Description of the Preferred Embodiment or claim language. *See id*. At the *Markman* hearing and in the Opening brief, Plaintiff asserts that it is impermissible under Federal Circuit and Supreme Court precedent to read into a claim an element that is not present, even though it may be found in the description portion of the patent. OPENING at 8; *Innova/Pure Water Inc*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) (citing *White v. Dunbar*, 119 U.S. 47, 51–52 (1886); *Continental Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 419 (1908)). Specifically, Plaintiff maintains that "even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex,* 299 F.3d at 1327). All in all, Plaintiff denies that the intrinsic record demonstrates the requisite intent to clearly limit the claim. OPENING at 8.

Defendant argues that Colucci has intentionally disavowed any embodiment that is too large to fit in the putting hole cup because the specification states that "[t]he putter head *is small enough* to enter the putting hole cup to retrieve the ball." '927 patent at 1:38–40; RESPONSE at 9. According to Defendant, by using affirmative language to set forth the object of his invention, Colucci is describing his invention as a whole and effectively limiting the embodiment to the invention itself–

7

despite the abstract possibility that the claim could be read more broadly. *See* Transcript at 22:2–7; *see also* (Doc. No. 61) ("Callaway Letter Brief"). Callaway contends that Colucci has provided "clear and express definitions" that amount to specification disclaimer. *Id*. at 10; Transcript at 23:16–18 ("So we think that Mr. Colucci did disclaim anything other than a putter head that is larger– or that is larger than something that could fit inside of a cup."). In support of its position, Callaway cites Federal Circuit law governing specification disclaimer to conclude that the claims must be read to limit the invention to a putter head small enough to pick up a golf ball out of a putting cup. Response at 10 (relying on *Netcraft Corp v. eBay, Inc*., 549 F.3d 1394, 1398 (Fed. Cir. 2008); *Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339–40 (Fed. Cir. 2004); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1343–44 (Fed. Cir. 2001)).

### *Examination of the Claim Language*

The Court does not read the '927 patent to contain a clear disavowel of the full scope of the claim language. *See Home Diagnostics, Inc., v. Lifescan, Inc*., 381 F.3d 1352, 1358 (Fed. Cir. 2004) (holding that "[a]bsent a clear disavowel or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of the claim language."). Importantly, the claim language does not mention the size of the putter head, and accordingly, Defendant does not support its contention with any reference to language from the claims. *See Innova/Pure Water,* 381 F.3d 1111, 1116 (Fed. Cir. 2004) (emphasizing that the claims are the measure of an invention). In common parlance, a "putter head" need not be small enough to fit within a putting hole cup. Therefore, the absence of claim language suggesting a restrictive reading of "putter head" weighs against Defendant's position.

8

### *Examination of the Specification*

A review of the specification in its entirety also weighs against reading the claims restrictively because Defendant has not  identified language that rises to the level of a "clear and unmistakable" disclaimer. *Cordis*, 561 F.3d at 1329. Defendant has the burden of overcoming the "heavy presumption" in favor of giving the claim terms their ordinary meaning, and the patentee's intention, as expressed in the specification, fails to confine the putter head to a single embodiment. *Phillips*, 415 F.3d at 1312–13, 1323; *Liebel-Flarsheim*, 358 F.3d at 913 (finding that claim terms must be given their ordinary meaning unless the claim language is overcome by statements of "clear disclaimer" expressly indicating "manifest exclusion or restriction").[2] As noted above, the ordinary meaning of a "putter head" need not be restricted in size, and the disputed language in the specification supports a finding that embodiments of Colucci's invention may be small enough to fit within a putting cup, but the specification does not limit that embodiment to the exclusion of its broader effect. *Innova/Pure Water*, 381 F.3d at 1117 ("Accordingly, particular embodiments appearing within the written description will not be used to limit the claim language that has broader effect. And, even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit claim scope 'using words or expressions of manifest exclusion or restriction.'").

---

[2]  The Federal Circuit's holding in *Liebel-Flarsheim* provides a particularly relevant discussion of the "inherent tension" that exists in a situation where, as here, "the written description of the invention is narrow,  but the claim language is sufficiently broad that it can be read to encompass features not described in the written description" (i.e. a putter head that is too large to fit within a putting hole cup). 358 F.3d at 904–05. Judge Bryson discusses in great detail two axioms often relied upon for contrary arguments: On the one hand, claims "must be read in view of the specification of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). On the other hand, it is improper to read a limitation from the specification into the claims. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1327 (Fed. Cir. 2003). Judge Bryson then comments that parties frequently cite to one or the other of these competing principles as if the axioms, standing alone, were sufficient to decide a claim construction dispute. *Liebel-Flarsheim,* 358 F.3d at 904.

While a patentee can implicitly redefine a claim term by *consistently* using that term in a particular way, *see Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group*, 262 F.3d 1258, 1271 (Fed. Cir. 2001), particular embodiments or examples from the specification will not be read into the claims where usage has been inconsistent. *See Comark*, 156 F.3d at 1187. The '927 specification presents different assessments as to whether the putter head *must* be small enough to enter the putting hole cup. When the patentee initially describes the object of his invention, he lists five distinct objects and makes the open-ended statement that the invention "*can* pick up a golf ball out of a putting cup." '927 patent at 1:22–23.  Two paragraphs later, however, the patentee makes a more affirmative statement by saying "The putter head *is* small enough to enter the putting hole cup to retrieve a golf ball." '927 patent at 1:38–40. The remainder of the patent, including the Preferred Embodiment section and the claims themselves, do not discuss any limitation that would necessitate the putter head being small enough to fit within a putting hole cup. Therefore, the difference between "can" (it may or may not be small enough) and "is" (it must necessarily be small enough), combined with the later absence of size limitations in the Preferred Embodiment section and the claims themselves, results in an inconsistent treatment of the claim term throughout the specification that cannot amount to an intentional disclaimer.

When the specification describes certain features as "preferable" or as examples, courts have found no disclaimer of claim scope. *Fenner Investments, Inc. v. 3Com Corp.*, No. 6:08-cv-61, 2009 WL 1505407, at *12 (E.D. Tex. May 26, 2009). Here, although the disputed language is not explicitly discussed as "preferable" or an example, the discrepancy between the specification and the claims, as well as the inconsistency within column 1 of the specification suggests that the patentee was considering embodiments that were not necessarily limited by the size of the putting

hole cup. This is in contrast to circumstances where the patentee expressly contemplated "all embodiments of the present invention."[3] *See SciMed*, 242 F.3d at 1345.

Finally, the Court rejects the possibility of specification disclaimer because there is insufficient evidence to establish that the disputed feature (size of the putter head) is "critical" or renders the invention distinguishable over the prior art. *See Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1354–57 (Fed. Cir. 2006); *Fenner*, 2009 WL 1505407, at *11. Rather, the novelty of the claimed invention appears to be its combination of the weight distribution means with a means for retrieval. This multi-faceted approach to novelty is supported by the five objects of the invention, the description of the Preferred Embodiment, as well as the claim language's focus on the physics of the WDM. *See* '927 patent.

### Examination of the Prosecution History

The prosecution history primarily focuses on the mechanics of the weight distribution means without further elaboration on the means for retrieving the golf ball. Claim 1 discusses only the broad situation where the putter head is comprised of a "means for retrieving a golf ball" and where a golf ball is retrieved "when the putter head is placed over a golf ball and pressure is applied downward." '927 patent at 2:53, 2:61–62. The claim language makes no attempt to distinguish this invention from prior art through limiting the size of the putter head, although it would have been

---

[3]  Defendant argues that when a patentee discusses his invention with particular phrases such as "present invention" or "the object of my invention," the patentee's intention is unambiguous and courts should limit claim scope. RESPONSE AT 9; CALLAWAY LETTER BRIEF. Even if the Court were to find that "the object of my invention" is equivalent to the usage of "the present invention" in *Verizon*, the Court will not limit claim scope simply due to the use of that language. *Fenner Investments, Inc. v. 3Com Corp.*, No. 6:08-cv-61, 2009 WL 1505407, at *11–12 (E.D. Tex. May 26, 2009) (discussing *Verizon*, 503 F.3d at 1308) (noting in *Fenner* that the Court will not read a specification discussing "present invention" to be magic words that automatically triggers a narrowing of the claim language). Additionally, the Court is hesitant to conclude that the language here is equivalent to "the present invention" disclosed in *Verizon*, in part, because in describing the object of his invention, the patentee does not use wholly affirmative language. *See* '927 patent at 1:23 (using the qualified terminology "can pick up" instead of affirmative language such as "must pick up. . ." or "picks up a golf ball. . .").

straightforward for either the patentee or the Examiner to have done so. In the file history, neither the patentee nor the Examiner sought to impose such a limitation. (Doc. No. 51, EXHS. E, F, and H) ("Colucci File History") (the complete file history containing Colucci's patent application and all related papers prepared by the Patent Office and the applicant during the patent prosecution). Instead, the file history shows that Colucci originally filed four claims, none of which reference the putter head fitting in the putting hole cup, and after an initial rejection,  Colucci amended his claims to more clearly define the weight distribution means behind the blade. *See* COLUCCI FILE HISTORY; TRANSCRIPT at 31–33. Absent any discussion in the file history as to the size of the retrieval means, the Court concludes that claim 1 is broad enough to cover a putter head that  can be either small enough to fit within a putting hole cup or too large for the cup but still able to retrieve the ball somewhere else.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court is not persuaded that one skilled in the art would read the intrinsic evidence as containing explicit expressions of exclusion or restriction such that the size of the putter head was limited to an embodiment that fits within a putting hole cup. Accordingly, the Court finds that the term "putter head" needs no construction. The term, when read in the context of claim 1, will be readily understood by a jury.

For the ease of reference, the Court's claim interpretations are set forth in a table attached to this Order as Appendix A.

**So ORDERED and SIGNED this 21st day of January, 2010.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **NICHOLAS COLUCCI,** | § | |
| **d/b/a EZ LINE PUTTERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION No. 6:08cv288-JDL** |
| **v.** | § | |
| | § | |
| **CALLAWAY GOLF COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>APPENDIX A</u>**

**U.S. PATENT No. 4,962,927**

| Claim Language | Claims | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| putter head | claims 1 and 2 | No construction required. | The portion of the putter connected to the distal end of the putting hole cup to retrieve a golf ball. | No construction required. |
| walls, generally coextensive in height | claim 1 | The side walls extend rearwardly from the rear surface of the blade and are generally coextensive in height with the top of the blade. | No construction required. | No construction required. [As agreed to by the parties] |
| weight distribution means | claim 1 | That portion of the putter head comprising a horizontal flange extending rearwardly from the top of the blade and side walls extending rearwardly from the rear surface of the blade. | No construction required. | No construction required. [As agreed to by the parties] |
| generally coextensive | claim 1 | No construction required. | . . . about the same. . . | Generally the same. [As agreed to by the parties] |

14