IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| NICHOLAS COLUCCI | § | |
| --- | --- | --- |
| d/b/a EZ LINE PUTTERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:08cv288-JDL |
| | § | |
| CALLAWAY GOLF COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Callaway Golf Company's ("Callaway") Renewed Motion for Judgment as a Matter of Law that the '927 Patent is Obvious (Doc. No. 201) ("Renewed Motion"). Plaintiff Nicholas Colucci, d/b/a EZ Line Putters ("Colucci") opposed the Renewed Motion with a Response (Doc. No. 202) ("Response") and a Surreply (Doc. No. 208) ("Surreply"). Callaway additionally filed a Reply (Doc. No. 206) ("Reply"). For the reasons discussed herein, Callaway's Motion for Judgment as a Matter of Law is **DENIED**.

## BACKGROUND

Colucci filed this action against Callaway on July 11, 2008, alleging infringement of U.S. Patent No. 4,962,927 ("the '927 patent"),[1] as well as trade dress infringement and unfair

---

[1] At the close of trial, Colucci accused the following Callaway putters of infringing the '927 patent: Odyssey White Hot XG #7, Odyssey White Hot XG Sabertooth, Odyssey White Hot XG Sabertooth, Odyssey Black Series i#7, and Odyssey Crimson Series 770.

1

competition.² *See* Doc. No. 1 at 5–7 ("Complaint"). Plaintiff alleged that Callaway's accused putters embody the putter head claimed in the '927 patent.

A jury trial was held between March 1 and 5, 2010³ on the allegations of patent and trade dress infringement, as well as the validity of each of the asserted claims due to obviousness. In evaluating the evidence presented at trial, the jury first considered Colucci's claims of patent infringement. While the jury found that none of the Callaway putters literally infringed claims 1 or 2 of the '927, it also found that the Odyssey White Hot XG #7, Odyssey White Hot XG Sabertooth, Odyssey White Hot XG Sabertooth, Odyssey Black Series i#7, and Odyssey Crimson Series 770 infringed claim 1 under the doctrine of equivalents. Doc. No. 161 at 1–3 ("Jury Verdict"). The jury additionally found that claims 1 and 2 of the '927 patent were not invalid. *Id*. at 3. The jury awarded $135,416.00 for infringement of independent claim 1. *Id*. at 4. Also answering questions as to trade dress infringement, the jury found that Colucci did not have a protectable trade dress in the Jackpot or EZ Line putters. JURY VERDICT at 5–9. In the absence of a protectable trade dress, Colucci's claims of trade dress infringement failed and Plaintiff was not entitled to damages under this theory.

## OVERVIEW OF THE PRIOR ART REFERENCES

At trial, Callaway introduced two prior art references and asserted that they invalidated the '927 patent under 35 U.S.C. § 103. Both prior art references were alleged to precede the patent-in-

---

² At the close of trial, Colucci accused the following Callaway putters of infringing Mr. Colucci's claimed trade dress: Odyssey Marxman Mallet, Odyssey Marxman Mini, and Odyssey Divine Line Marxman.

³ The trial testimony is contained eight volumes over the course of five days. The transcripts are cited by day, with an indication of whether the testimony was in the morning or afternoon, the page number, and the corresponding lines. For example, "DAY 1 AFTERNOON TRIAL TR. at 3:6–8." These volumes correspond to docket entry numbers 164–171.

suit, which issued on October 16, 1990 after being filed with the United States Patent and Trademark Office on February 15, 1990.

## I. The RAM Little Z Putter

One of two allegedly invalidating pieces of prior art discussed at trial was the modified RAM Mallet Zebra Putter, known and discussed as the "RAM Little Z putter" or "Little Z." *See* DAY 4 MORNING TRIAL TR. at 114:2–21; DEF. EXH. 33 ("RAM Little Z putter"). It is undisputed that this putter has a blade with a sweet spot and seven sighting lines. Callaway introduced testimony that this putter was designed to distribute the weight of the putter head behind the blade in the areas "closer to the face of the putter and at the extremities of the heel and toe of the putter" to achieve "a more optimal moment of inertia." *Id.* at 122:6–16; *see also* 123:15–21; and 124:1–13. It is also undisputed that the RAM Little Z will not pick up a ball because the rearward-extending walls of the putter head, which form the cavity in the bottom of the putter, are "too close together in the front and too far apart in the back." *Id.* at 178:18–23 (as characterized by Callaway's expert, Mr. Long, in examining photographs of the RAM Little Z).

## II. The Brill Patent

The second piece of allegedly invalidating prior art is U.S. Patent No. 4,580,784, which issued on April 8, 1986 and claims a golf club with ball retrieval devices. DEF. EXH. 17 ("Brill patent"). This patent designates a retrieval means that allegedly discloses the same retrieval means claimed in the '927 patent. The Brill patent teaches a means to retrieve a golf ball by pressing downwardly so that the bottom walls grip the ball and the ball becomes wedged in the putter head.

**APPLICABLE LAW**

## I. Motion for Judgment as a Matter of Law

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district would usually lie." *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). To prevail on a renewed motion for judgment as a matter of law following a jury trial under Federal Rule of Civil Procedure 50(b), the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)); *see also Power-One, Inc. v. Artesyn Technologies, Inc.*, 556 F. Supp.2d 591, 593–94 (E.D. Tex. 2008) (Love, M.J.) (citing Fifth Circuit cases articulating the Rule 50(b) standard for judgment as a matter of law).

In recreating the facts as they may have been found by the jury, the record is assessed in the light most favorable to the verdict winner. *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp.2d 361, 370 (E.D. Tex. 2009) (citing *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997)); *see also Gomez v. St. Jude Med. Daig Div., Inc.*, 442 F.3d 919, 927 (5th Cir. 2006). The court must view the trial record as a whole, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000), and not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893; *see also Orion IP, LLC v. Mercedes-Benz USA, LLC*, No. 6:05-cv-322, 2008 WL 5378040, at *2 (E.D. Tex. Dec. 22, 2008).

## II. Determining Obviousness

In accordance with patentability requirements set forth in 35 U.S.C. § 103, a patent claim may be determined invalid if it is found to be "obvious" in light of the prior art. A claim is invalid if the patented invention would have been obvious to a person having ordinary skill in the art to which the subject matter of the patent pertains, at the time the invention was disclosed. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 401 (2007) (citing 35 U.S.C. § 103); *see also Glaxo Group Ltd. v. Apotex, Inc.*, 268 F. Supp.2d 1013, 1031 (N.D. Ill. 2003) ("A patent claim is invalid for obviousness where the differences between the subject matter patented and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art at the time the invention was made.")).

There is a presumption that a patent is valid. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000). To overcome the presumption of validity, the party seeking to invalidate a patent must present clear and convincing evidence that a patent is invalid. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999). Whether or not a claim is obvious in light of prior art is a legal conclusion, but one which is premised on factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 18 (1966); *Beckson v. Marine v. NFM Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002). In ruling on the issue of obviousness, courts are to make explicit findings as to why the claims of the patent are or are not obvious, and may not rely on conclusory statements. *KSR*, 550 U.S. at 418 (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). The underlying factual inquiries are: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999) *abrogated on other grounds by In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).

## THE PARTIES' CONTENTIONS

After the jury found the '927 patent not invalid, Callaway filed the instant Renewed Motion[4] and the parties presented arguments as to whether claim 1 was obvious in light of the prior art in this case. Defendant Callaway contends that one of ordinary skill in the art of putter design would have thought it obvious modify the RAM Little Z putter by moving the walls inward so that it could pick up a golf ball. RENEWED MOTION at 2. Callaway maintains that all other elements disclosed in claim 1 of the '927 patent were well known in the prior art as taught in the RAM Little Z putter and the Brill patent. Callaway asserts that the RAM Little Z putter was on sale in the United States in1985, more than a year before Colucci's patent application was filed.

In response, Colucci raises a threshold question as to whether the RAM Little Z putter is legally sufficient prior art to invalidate the '927 patent. RESPONSE at 3–5. Colucci contends that Callaway attempts to establish the on-sale date for the RAM Little Z putter solely though oral testimony. Colucci asserts that the RAM Little Z putter cannot be relied upon as an invalidating prior art reference because its alleged on-sale date lacks contemporaneous corroboration. *Id.*; SURREPLY at 5. Callaway does not point to any corroborating evidence. Instead, Callaway argues that since obviousness is a legal question, the Court is free to consider the RAM Little Z when there is no contradictory evidence to suggest it does not qualify as prior art. REPLY at 2.

## ANALYSIS

**I.  Overview of the Disputed Testimony Purportedly Establishing the On-Sale Date for the Prior Art Reference**

During its case-in-chief, Callaway put on evidence that the '927 patent was invalid in light of two prior art references. To support this invalidity defense, Callaway relied on the opinion

---

[4] The Renewed Motion was filed following an Order from the Court requesting additional argument as to each party's views on the jury's invalidity finding (Doc. No. 200).

testimony of its technical expert, Clayton Long, who testified all claim limitations disclosed in the '927 were also present in the RAM Little Z putter, with the exception of a retrieval means to pick up a golf ball. DAY 4 MORNING TRIAL TR. at 178–180. Callaway also relied on the opinion and fact testimony of Mr. Allan Hansberger, former Director of Marketing and former Director of Research & Development, Product Design for the RAM Golf Company in the 1980s. In addition to providing his opinion as to the weight distribution elements found in the Little Z putter, Mr. Hansberger testified regarding the sale of the RAM Little Z in the marketplace in the 1980s, and he generally testified as to an on-sale date for the prior art putter.[5]

Mr. Hansberger gave an overview of RAM's product development process and he discussed specific features of the RAM Little Z. DAY 4 MORNING TRIAL TR. at 114:2–25. He further stated that although some Little Z putters were sold, the product did not achieve significant success in the marketplace:

> As I recall, this was not a very popular seller. And, yes, we did sell some, but . . . it wasn't one of the more popular models . . . because of the immense popularity of the regular Zebra Mallet, the original one. We tried to keep putting new models in the line and experimenting with different styles. And yeah, we did sell some of these, but it wasn't— you know, it wasn't a barn-burner if you will."

Day 4 MORNING TRIAL TR. at 115: 8–16. After acknowledging that sales of the Little Z were not widespread, Mr. Hansberger was specifically asked if sales did occur in the United States during his time of employment with the RAM Company. He affirmatively answered that there were sales, but he testified with less than complete certainty when discussing other distribution details: "I'm sure we sold them in the United States, and I'm sure we sold them [] throughout all of our distributors across the world, including *probably* Japan and Australia and South Africa and Europe and South

---

[5] Mr. Hansberger testified at trial through counsel reading portions of his deposition testimony into the record. *See* DAY 4 MORNING TRIAL TR. at 111:11–126:13.

America. I'm *pretty sure* we sold them all over the place, yeah." *Id*. at 115:19–24 (emphasis added). Mr. Hansberger goes on to further testify that he approximates that the RAM Company began selling the Little Z putter in 1985 but since he was "a little puzzled" on this point, he called the former Manufacturing Director (Bob Lukasiewicz), who conveyed his belief that RAM did the design and tooling work in 1983 and 1984, and introduced the putter into the marketplace in 1985. DAY 4 MORNING TRIAL TR. at 116:4–16. Mr. Hansberger also told the jury that this putter would have appeared in golf catalogs during the 1985 sales season. *Id*. at 116:21–117:3.

Aside from these statements from Mr. Hansberger, Callaway did not introduce any further exhibits, in the form of sales invoices, RAM financial records, or publicly available golf catalogs that corroborate that such sales took place. In short, a review of the exhibits in this case only identifies a picture of the putter head that is titled "Ram Golf Little Z putter– 1985." DEF. EXH. 156. There do not appear to be any contemporaneous physical records to corroborate this date.

## II.    Qualifying Prior Art Under § 102

In order for prior art to be used in combination to determine obviousness under 35 U.S.C. § 103, the alleged prior art must first qualify as prior art under § 102(a), (b), (e), (f), or (g).[6] *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp.2d 361, 371 (E.D. Tex. 2009) (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401–02 (Fed. Cir. 1997)). In this case, the contested issue is whether the RAM Little Z putter qualifies as prior art under the "on sale," or "public use"

---

[6] It is a basic principle of patent law, subject to minor exceptions, that prior art is:

> technology already available to the public. It is available, in legal theory at least, when it is described in the world's accessible literature, including patents, or has been publicly known or in ... public use or on sale "in this country." That is the real meaning of "prior art" in legal theory– it is knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in the art.

*OddzOn*, 122 F.3d at 1402 (quoting *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed.Cir.1984)).

prong of § 102(b).[7] In order for a putter in use or on sale to be considered prior art in this case, it must be either (1) used in the United States or (2) **the subject of a commercial offer for sale more than a year before Colucci's application was filed** (i.e. Feb. 15, 1990). *See* 35 U.S.C. § 102(b) (emphasis added). This latter "on sale" clause is the focus of the inquiry regarding the RAM Little Z putter.

To rely on a particular reference, the presumption of validity, 35 U.S.C. § 282, requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of the reference as prior art. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996). Testimonial evidence of invalidity must be corroborated, regardless of his or her level of interest. *Soverain Software, LLC v. Newegg Inc.*, No. 6:07-cv-511, slip op. at 23 (E.D. Tex. Aug. 11, 2010); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366–70 (Fed. Cir. 1999) ("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony.").

The sufficiency of the corroborating evidence is decided in view of the facts of each case, but documentary or physical evidence made prior to or contemporaneously with the patented invention appears to provide the most reliable proof of corroboration. *See Finnigan Corp.*, 180 F.3d at 1366–67 (citing *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998)) (noting the skepticism with which mere testimony of invalidating activity is received and discussing the ubiquitous paper trail that accompanies almost all commercial activity in modern times: "It is rare indeed that some physical record. . . does not exist."); *MGM Well Services, Inc.*

---

[7] Section 102(b) provides: "the invention was patented or described in a printed publication in this or a foreign country or in public use or *on sale in this country*, more than one year prior to the date of the application for patent in the United States" 35 U.S.C. § 102(b) (emphasis added).

*v. Mega Lift Sys., LLC*, 534 F. Supp.2d 705, 715 (S.D. Tex. 2007) ("testimony regarding invalidating activities must be corroborated by reliable evidence preferably in the form of contemporaneous physical records") (citing *Juicy Whip, Inc. v. Orange Bang, Inc*., 292 F.3d 728, 742–43 (Fed. Cir. 2002)). Moreover, when considering the sufficiency of contemporaneous evidence in an obviousness context, clear and compelling evidence that a prior art reference was publicly used, offered for sale, or sold prior to the critical date is required. *See Mass Engineered*, 633 F. Supp.2d at 373–74. In *Mass Engineered*, evidence of a "purchase order update" was insufficient to memorialize the sale of the purported prior art reference because "reasonable minds could easily differ as to whether a sale or true offer for sale had occurred." *Id*. (citing *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc*., 322 F.3d 1335, 1347–48 (Fed. Cir. 2003)).

### III. The RAM Little Z Putter Lacks Sufficient Corroboration to Serve as an Invalidating Prior Art Reference

The foregoing legal backdrop supports Colucci's position that in order to prove invalidity by clear and convincing evidence, Callaway was required to corroborate trial testimony intended to establish an on-sale date for the RAM Little Z putter. Based on the evidence presented to the jury, it does not appear that there was a single exhibit intended to provide such corroboration. This failure to corroborate that a putter containing every limitation in the '927 patent (with the exception of the retrieval means) was offered for sale prior to the filing date precludes Callaway from invalidating the patent under § 103. A finding of obviousness, whether rendered by a jury or the Court, requires underlying factual support. *Cardiac Pacemakers, Inc. v. St. Jude. Med., Inc*., 381 F.3d 1371, 1375 (Fed. Cir. 2004). Thus, without the requisite evidence corroborating Mr. Hansberger's testimony that the alleged prior art putter preceded Colucci's invention, the Court cannot reach the legal merits on Callaway's obviousness contenion.

Additionally, the failure to corroborate Mr. Hansberger's testimony creates a reasonable basis for the jury to reject Callaway's arguments. At the close of trial, instructions provided to the jury on prior art expressly stated that "Callaway Golf must prove by *clear and convincing evidence that the references it relies on are prior art*. To do so, Callaway Golf *must prove that the items fall within one or more of the categories of prior art recognized by the patent laws*." In pertinent part, the jury instructions identified the "on-sale" prior art category as "Anything that was in public use or on sale in the United States more than one year before the application for the patent was filed." Doc. No. 159 at 15 ("Jury Charge") (emphasis added). In light of these instructions, it is reasonable for the jury to find Mr. Hansberger's testimony not credible and render a validity finding in Colucci's favor. Given this possibility, the jury's verdict should not be disturbed. *See Power-One, Inc. v. Artesyn Technologies, Inc*., 556 F. Supp.2d 591, 593–94 (E.D. Tex. 2008) (in evaluating a Rule 50 motion on obviousness, "a jury's verdict must be affirmed unless there is no legally sufficient evidentiary basis for a reasonable jury to have found for the non-movant.") (internal citations omitted).

Callway is correct in identifying the Court as ultimate arbiter on the question of obviousness, REPLY at 2, but that question can be reached only when a defendant first demonstrates by clear and convincing evidence that references are, in fact, prior art. To that end, the Federal Circuit has specifically noted that the purpose of corroboration is to "prevent fraud" by "providing independent confirmation of the inventor's testimony." *Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997). Here, the inventor of prior art is not the testifying witness, but even without Mr. Hansberger having an identifiable interest in the outcome of this suit, there is no contemporaneous evidence to confirm his beliefs as stated at trial. Neither the jury nor the Court is compelled to believe his testimony to be true. In short, the corroboration requirement addresses the concern that oral

testimony might not be wholly accurate. *Washburn & Moen Mfg. Co. v. Beat Em All Barb-Wire Co.*, 143 U.S. 275, 284 (1892) (discussing the unreliability of testimony as to long-past events, particularly in view of witness forgetfulness, their liability to mistakes, and their proneness to recollect things as the party calling them would have them recollect them). Although there is no suggestion that Mr. Hansberger did not testify in good faith, he did at least suggest that his memory going back to the mid 1980s was somewhat hazy. For example, he stated that he "was pretty sure" that the RAM Little Z was sold under certain dates and conditions and he relied on a third party's "belief" to establish the on-sale date as being in 1985. DAY 4 MORNING TRIAL TR. at 115:19–24 and 116:10–16. The law requires a more definitive confirmation of these assertions before relying on the RAM Little Z putter as invalidating prior art.

Callaway argues that "the uncontradicted facts show that the Ram Little Z Putter and Brill Patent were prior art," MOTION at 7–10; REPLY at 2, but the absence of testimony rebutting Mr. Hansberger's statements is not the same as affirmatively putting forth clear and convincing evidence as to the date the Little Z was offered for sale. Callaway's argument does not account for the fact that it has the burden, and a heightened one at that, to prove an invalidity defense. A patent is presumed valid. To prove a patent is invalid, an accused infringer must initially establish clearly and convincingly that the references it relies upon are, in fact, prior art. *See Technology Licensing v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).

Having reviewed the transcript of Mr. Hansberger's testimony and the exhibits admitted at trial, Callaway has failed to introduce any evidence that corroborates the Mr. Hansberger's on-sale date for the RAM Little Z. Moreover, Mr. Hansberger's personal knowledge of an on-sale date is undercut by the lack of certainty in his testimony and his need to confer with a former co-worker to confirm the correct time period. Under these circumstances, Callaway has not shown that the

jury's verdict on invalidity should be disturbed, nor have they shown that the Court should find the asserted claims obvious.

## **CONCLUSION**

For the foregoing reasons, Callaway's Renewed Motion for Judgment as a Matter of Law (Doc. No. 201) is **DENIED**.

**So ORDERED and SIGNED this 1st day of October, 2010.**

*[signature: John D. Love]*

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE