IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| NICHOLAS COLUCCI d/b/a EZ LINE PUTTERS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION No. 6:08cv288-JDL |
| CALLAWAY GOLF COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Callaway Golf Company's ("Callaway") Renewed Motion for Judgment as a Matter of Law of Non-Infringement under the Doctrine of Equivalents (Doc. No. 187) ("Renewed Motion"), Plaintiff Nicholas Colucci's, d/b/a EZ Line Putters ("Colucci") Opposition (Doc. No. 191) ("Response") and Callaway's Reply (Doc. No. 197) ("Reply"). For the reasons discussed herein, Callaway's Motion for Judgment as a Matter of Law is **GRANTED**.

## BACKGROUND

Colucci filed this action against Callaway on July 11, 2008, alleging infringement of U.S. Patent No. 4,962,927 ("the '927 patent"),[1] as well as trade dress infringement and unfair competition.[2] *See* Doc. No. 1 at 5–7 ("Complaint"). Plaintiff alleged that Callaway's accused putters embody the putter head claimed in the '927 patent.

---

[1] At the close of trial, Colucci accused the following Callaway putters of infringing the '927 patent: Odyssey White Hot XG #7, Odyssey White Hot XG Sabertooth, Odyssey White Hot XG Sabertooth, Odyssey Black Series i#7, and Odyssey Crimson Series 770.

[2] At the close of trial, Colucci accused the following Callaway putters of infringing Mr. Colucci's claimed trade dress: Odyssey Marxman Mallet, Odyssey Marxman Mini, and Odyssey Divine Line Marxman.

1

A jury trial was held between March 1 and 5, 2010[3] on the allegations of patent and trade dress infringement, as well as the validity of each of the asserted claims due to obviousness. In evaluating the evidence presented at trial, the jury first considered Colucci's claims of patent infringement. The jury found that the accused Callaway putters did not literally infringe claims 1 and 2 of the '927 patent, but did find that they infringed claim 1 of the '927 under the Doctrine of Equivalents. Doc. No. 161 at 1–3 ("JURY VERDICT"). The jury additionally found that claims 1 and 2 of the '927 patent were not invalid. *Id*. at 3. The jury awarded Colucci $135,416.00 for infringement of independent claim 1. *Id*. at 4. Answering questions as to trade dress infringement, the jury found that Colucci did not have a protectable trade dress in the Jackpot or EZ Line putters. *Id.* at 5–9.

## APPLICABLE LAW

**I.      Motion for Judgment as a Matter of Law**

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district would usually lie." *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). To prevail on a renewed motion for judgment as a matter of law following a jury trial under Federal Rule of Civil Procedure 50(b), the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d

---

[3] The trial testimony is contained in eight volumes over the course of five days. The transcripts are cited by day, with an indication of whether the testimony was in the morning or afternoon, the page number, and the corresponding lines. For example, "DAY 1 AFTERNOON TRIAL TR. at 3:6–8." These volumes correspond to docket entry numbers 164–171.

888, 893 (Fed. Cir. 1984)); *see also Power-One, Inc. v. Artesyn Technologies, Inc.*, 556 F. Supp. 2d 591, 593–94 (E.D. Tex. 2008) (Love, M.J.) (citing Fifth Circuit cases articulating the Rule 50(b) standard for judgment as a matter of law).

In recreating the facts as they may have been found by the jury, the record is assessed in the light most favorable to the verdict winner. *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 370 (E.D. Tex. 2009) (citing *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997)); *see also Gomez v. St. Jude Med. Daig Div., Inc.*, 442 F.3d 919, 927 (5th Cir. 2006). The court must view the trial record as a whole, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000), and not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893.

## II. Doctrine of Equivalents

An accused device which does not literally infringe may nonetheless infringe a claim under the doctrine of equivalents if each limitation of the claim is met in the accused device equivalently. *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1382 (Fed. Cir. 2009) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998)). To support a finding of infringement under the doctrine of equivalents a patentee must demonstrate either (1) an insubstantial difference between the claimed invention and the accused product or method or (2) satisfy the function, way, result test. *Aquatex Insustries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (citing *Graver Tank & Mfg. v. Linde Air Prods Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). A claim limitation and an element in an accused device are equivalents if a person of ordinary skill in the art would find the differences to be insubstantial. *Amgen, Inc.,* 580 F.3d 1382

3

(citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed. 146 (1997)).

The burden is on the patentee to show infringement under the doctrine of equivalents. *Aquatex*, 479 F.3d at 1328 (citing *PSC Computer Prods. Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004)). Accordingly, a patentee must provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device or process on a limitation-by-limitation basis. *Id.* (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Id.* A patentee should typically provide particularized testimony from a qualified expert describing the claim limitations and establishing that those skilled in the art would recognize the equivalents. *Id.* at 1329. The particularized testimony standard does not, however, require that an expert witness "re-start his testimony at square one when transitioning to a doctrine of equivalents analysis." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007). Instead, an expert may explicitly or implicitly incorporate his or her earlier testimony into the doctrine of equivalents analysis. *Id.*

## THE PARTIES' CONTENTIONS

After the jury found Callaway's products to infringe the '927 Patent under the doctrine of equivalents, Callaway filed the instant motion contending that the jury's verdict should be set aside. Callaway asserts that Colucci failed to put forth sufficent evidence of equivalency to support a jury finding that Callaway's putters infringed the '927 patent under the doctrine of equivalents.[4]

---

[4] Callaway also makes two alternative arguments. Callaway contends that prosecution history estoppel bars infringement under the doctrine of equivalents because Colucci narrowed the originally rejected claim 1 consequently surrendering all equivalents between the teaching of the prior art and retrieval walls which are

MOTION at 2-3. In response, Colucci contends that substantial evidence of infringement under the doctrine of equivalents was before the jury via the Charge to the Jury, testimony from John Howard (Colucci's infringement expert) and during closing argument from both parties.[5] RESPONSE at 2-4.

## **ANALYSIS**

Callway is correct that Colucci failed to present a case to support a jury finding of infringement under the doctrine of equivalents. Outside of closing argument, Colucci did not reference the doctrine of equivalents. Nonetheless, the Court must determine whether Colucci presented enough evidence for the jury to reasonably infer that Callaway infringed the '927 under the doctrine of equivalents. *See Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 n.5 (Fed. Cir. 2001) (not requiring recitation of "magic words" when presenting a case under the doctrine of equivalents). As further detailed, Colucci failed to provide the particularized testimony and linking argument demonstrating the insubstantiality of the differences between Callaway's putters and claim 1 of the '927. *Texas Instruments, Inc.,* 90 F.3d at 1567.

Colucci contends that the doctrine of equivalents was presented to the jury via the Charge to the Jury, closing argument and the testimony of John Howard (Colucci's infringement expert). RESPONSE at 2-3. The Charge to the Jury and attorney argument are not evidence on which the jury

---

"generally coextensive" with the blade of the putter. MOTION at 2-3. Second, Callaway contends that because the accused putters have retrieval walls less than half the height of the blade, a finding of infringement under the doctrine of equivalents would effectively vitiate the limitation requiring "generally coextensive" walls. *Id.* at 11-14. Colucci responds that (1) this Court previously held that Colucci broadened the claim at issue during prosecution and (2) Callaway's dependence on Colucci's deposition testimony regarding narrowing is misplaced because Colucci is not a lawyer. *Id* Regarding the claim vitiation argument, Colucci also argues that Callaway's interpretation of the term "generally the same" is incorrect and the claim is not vitiated.

[5] Colucci also raises a threshold issue contending that Callaway did not properly preserve the relevant issues at trial. RESPONSE at 4-5. Contrary to Colucci's assertion, Callaway moved for judgment as a matter of law under Rule 50(a) both at the close of Colucci's case-in-chief and at the close of all evidence for all issues presented in Callaway's post-verdict 50(b) motion. *See* (Dkt. No. 183 at 29-30, JMOL 13; Dkt. No. 184 at 30, JMOL 13; DAY 4 AFTERNOON TRIAL TR. at 144:6-155:21).

could rely to make a determination of infringement. Thus, the only relevant evidence Colucci provided on infringement was Mr. Howard's testimony.

Reviewing the record in the light most favorable to Colucci, it is apparent Mr. Howard provided extensive and detailed testimony regarding *literal* infringement. Mr. Howard, however, provided scant testimony regarding the insubstantiality of the differences between the accused products and the '927 claims. The Federal Circuit requires the patentee to "raise separate and distinct arguments for infringement under the doctrine of equivalents." *nCube Corp. v. Seachange Int'l Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006). In other words, the "evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989).

Colucci cites particular portions of Mr. Howard's testimony which support the jury finding of infringement under the doctrine of equivalents. All of the evidence cited by Colucci, however, was directed at a literal infringement analysis. For example, Mr. Howard began his testimony regarding infringement with the following colloquy with Colucci's counsel:

> Q. All right. Thank you, sir.
> Now, Mr. Howard, just before the break, you
> testified that you had reached opinions on infringement
> of each of the accused Callaway products; is that
> correct?
>
> A. That's correct, yes.
>
> Q. All right. What is your opinion as to the
> infringement with respect to the White Hot XG No. 7?
>
> A. I examined the White Hot XG 7, and I found
> that it met all of the criteria in terms of the accused
> putter and all the features that are listed in the
> Colucci pattern (sic) are found in the White Hot XG's.
>
> Q. And all the elements of the claims are found

>       in the XG 7 putter?
>
>       A. That's correct, yes.
>
>       Q. Do you find that the XG 7 putter infringes the
>       '927 patent?
>
>       A. They do, yes.

DAY 2 AFTERNOON TRIAL TR. at 3:15-4:7. Colucci's counsel continued this line of questioning with regard to each of the accused putters, with Mr. Howard opining that they infringe the '927 patent. Mr. Howard did not, at any time, provide an opinion regarding whether the Callaway putters infringe the '927 under the doctrine of equivalents.

Following this generalized testimony, Mr. Howard used a demonstrative to highlight the *literal* presence of each claim limitation of the '927 in the accused putters. *See e.g Id.* at 9:23-10-7, 10:17-25, 11:12-17, 12:6-12, 17:25-18:22, 19:7-12 and 19:25-20:10. For example, while highlighting portions of a demonstrative CAD drawing of the Callaway White Hot Tour No. 7H putter, Mr. Howard provided the following testimony:

>       Q. All right. Thank you.
>       All right. Now, Mr. Howard, let's take a look
>       at each of the elements of the claims. The elements of
>       the claims of the '927 patent, Claim 1, is listed on the
>       left-hand side of the -- of the drawing; is that
>       correct?
>
>       A. That's correct, yes.
>
>       Q. Can you point out for me where the blade on
>       that putter would be?
>
>       A. Yes. The part that lit up in blue is the
>       blade.
>
>       . . .
>
>       Q. Now, the next portion of this claim calls for a weight distribution

means.

   Do you see that?

A. Yes.

Q. And it requires means for retrieving a golf ball. The retrieving means being defined by two substantially vertical, narrow walls, generally. And that now reads the same in height, generally the same in height as that of the blade.

   Do you find walls on that putter, the Tour 7H putter?

A. The blue rectangle that starts at the back of the blade is the beginning of the wall, and it is the same height or very close to the same height as – as the – as the blade and of the – of the flange on the – flange on the top of the blade.

Q. Now, as I look at this – this picture, it's difficult to see where the wall is.

   Can you explain that?

A. Yes.

  When you make a cut through these and you do a two-dimensional drawing, it actually has depth to it. So what you're looking at is an engineering drawing that has to be two-dimensional, but it has depth to it.

   So if you look at the blue rectangle, you will see on the – on the top and the back – on the top side and the backside, you can see cross-hatching that goes from left to right. In the center, you see cross-hatching that goes the opposite direction.

   What you're looking at, basically, is the wall that's right here (indicates), but you're looking at it through the cut. So the wall starts here, and its substantially the same height as the – as the blade[6]. And

---

[6] Viewing the particular "walls" that Mr. Howard had explicitly identified as the infringing walls on the Callaway putters, the Court finds that it would be exceedingly difficult, if not contradictory, for Mr. Howard to present *any* testimony on equivalency. Mr. Howard identified allegedly infringing walls and testified that they were "substantially the same height" as the allegedly infringing blade, i.e. they met the claim element of walls generally coextensive with the blade, and therefore they literally infringed that claim element. Given this testimony, it is difficult to see any range of equivalents that would be available to walls that are already substantially the same

> then it makes a transition down to this surface and is extended out –
> if we could have the next . . .
>
> So this becomes – this becomes the – the vertical walls that are used to pick up the ball.

*Id.* at 9:22-10:7; 12:6-13:17. Mr. Colucci's counsel continued the same line of questioning regarding every claim limitation and accused putter, eliciting similar testimony regarding literal infringement. Mr. Howard never provided testimony regarding infringement by equivalents.

Callaway's technical expert, Mr. Clay Long, provided the only evidence, indeed *contrary* evidence, to a finding of infringement under the doctrine of equivalents. *See* DAY 4 MORNING TRIAL TR. at 158:17-21; 161:2-12; 165:15-166:8; and 168:20-25. At a rebuttal witness, Mr. Howard merely provided more testimony regarding literal infringement, failing to reference equivalency or rebut Mr. Long's testimony on the same. *See* DAY 4 AFTERNOON TRIAL TR. at 135:16-138:23. In sum, Colucci failed to provide any direct testimony of infringement under the doctrine of equivalents, was alerted to the fact via Defendant's motion for judgment as a matter of law at the close of Plaintiff's case-in-chief and was provided an avenue to cure the defect during rebuttal—yet failed to mention equivalency until closing arguments.

Mr. Howard, however, provided a scintilla of evidence supporting infringement under the doctrine of equivalents during portions of his direct examination. For example, in discussing the Callaway White Hot XG Sabertooth putter, Mr. Howard stated that the bottom edges of the walls *substantially* provide reduced resistance from the grass while putting, thus infringing that limitation in claim 1 of the '927. *Id.* at 34:8-12. While the Federal Circuit does not require an expert to re-start his or her testimony when transitioning from a literal to doctrine of equivalents infringement

---

height as the blade. Indeed, Mr. Howard would likely be required to identify some other component in the accused putters as the infringing walls to support a finding of equivalency, which he did not.

analysis, stringing together these stray statements by Mr. Howard would fail to provide the "proper evidentiary foundation from which [a jury] may permissibly conclude that a claim limitation has been met by an equivalent." *Amgen Inc.*, 580 F.3d at 1382 (quoting *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1188 (Fed. Cir. 1998)). Mr. Howard failed to make any distinction between his literal infringement and doctrine of equivalents analysis. Any attempt to recreate that analysis post-verdict based on disparate snippets of Mr. Howard's testimony would be an after-the-fact justification to support the jury's verdict.

Colucci's further contention that Mr. Howard satisfied the function, way, result test is similarly unavailing. RESPONSE at 3. The function, way, result test requires, "the *evidence* to establish *what* the function, way and result of *both* the claimed device and the accused device are, and *why* those functions, ways and results are substantially the same." *Malta*, 952 F.2d at 1327 n.5 (emphasis in original). Colucci, as detailed above, failed to provide any evidence establishing *why* the functions, ways and results in the claimed putters are substantially the same as the accused putters.

As such, Colucci failed to put forth sufficient evidence to support a jury finding of infringement under the doctrine of equivalents. The Court's finding that Colucci failed to provide sufficient evidence to support a finding of infringement under the doctrine of equivalents moots the need to address Callaway's alternative arguments of prosecution history estoppel and claim vitiation.

## CONCLUSION

For the foregoing reasons, Callaway's Renewed Motion for Judgment as a Matter of Law (Doc. No. 187) is **GRANTED**.

Currently pending before the Court are Colucci's motions for a new trial on the issue of damages (Doc. No. 186) and Callaway's motions for entry of partial final judgment, costs and

attorney fees (Doc. No. 188) and renewed motion for judgment as a matter of law that the '927 is obvious (Doc. No. 201). In light of this Court granting Callaway's judgment as a matter of law on this issue of non-infringement, Colucci's motion for a new trial on the issue of damages (Doc. No. 186) is denied as moot. Callway's motion for renewed judgment as a matter of law regarding obviousness is addressed in a separate order. Additionally, the Court will allow Callaway to file an amended motion for costs by October 8, 2010. Any response to the motion for costs will be due by October 15, 2010.

**So ORDERED and SIGNED this 1st day of October, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE